[1] Reported in 274 N.W. 226.
This was a petition to appoint a trustee under a trust instrument executed by C.T. Edgar. In his answer to the petition Edgar alleged that the trust instrument was obtained by fraud, that it had never been delivered, and asked to have it declared void. The case was tried to the court, which made findings of fact, conclusions of law, and order for judgment in favor of petitioner. C.T. Edgar appeals from the judgment subsequently entered.
In 1916 Owen J. Evans died testate in Minneapolis, and his will was admitted to probate the same year. By the terms of the will Tamazine M. Evans, the widow of Owen J., was to receive certain benefits thereunder, and upon her death the real property, of which the bulk of the estate consisted, was to be reduced to cash by the *Page 341 
Minneapolis Trust Company, the trustee named in the will, and the cash so realized was to be distributed among the nieces, nephews, grandnieces, and grandnephews of said Evans who were living at the time of the widow's death. The final decree of distribution in the Evans estate was entered October 23, 1923.
L.F. Lammers, an attorney, was employed by the residuary legatees to act in a dispute which arose over the will (see In re Estate of Evans, 145 Minn. 252, 177 N.W. 126,8 A.L.R. 1631), and by the final decree of distribution the interest of these legatees was made subject to an attorney's lien in favor of Lammers for the sum of $8,540. Prior to May 29, 1925, this lien was assigned by Lammers to one Eggum to secure a $2,200 debt of Lammers to Eggum. Subject to this assignment Lammers assigned his interest in the lien to his son Raymond. In 1923 or 1924 an effort was made to foreclose this lien and to bid in the property for the amount of the lien. This was successfully opposed by the heirs, then represented by N.E. Pardee, a Minneapolis lawyer, in collaboration with attorneys from Iowa.
Edgar, this appellant, held a promissory note signed by L.F. Lammers, G.A. Parten, this petitioner, and one Frank Lammers. He employed Pardee to collect it. Suit was brought by Pardee, and a verdict for $6,650 was subsequently recovered against the makers. Before the trial Edgar had been fully advised of the attempt to foreclose the Lammers lien and that Pardee had represented the heirs in opposition.
July 1, 1925, Pardee, as attorney for Edgar, negotiated an agreement between Parten, Raymond Lammers (L.F. Lammers' assignee of the lien on the Evans estate), and Edgar, whereby the Lammers lien was assigned to Edgar; and Parten agreed to purchase the interest of C.K. Eggum in the Lammers lien and assign it to Edgar, who in turn was to foreclose the lien and out of the proceeds pay himself (Edgar) the amount of his verdict with costs and interest, then to pay Parten for the money advanced for the purchase of the Eggum claim and to pay the balance to Raymond Lammers. Parten carried out his part of that agreement and purchased *Page 342 
the Eggum interest in the Lammers lien for $2,435.33 and assigned it to Edgar.
In January, 1924, Pardee and Solether, law associates, became the attorneys for the residuary legatees under the Evans will. Edgar was an attorney of long standing at the bar and at all times after January, 1925, was informed that Pardee and Solether were acting for the Evans beneficiaries.
Pursuant to negotiations between Edgar, the Evans residuary legatees, and Pardee and Solether, it was agreed that Pardee and Solether as attorneys for Edgar were to foreclose the Lammers lien, to which Edgar then had title, and bid it in for Edgar for the amount of the lien, which was then, with accrued interest, in excess of $10,000, and seek the approval of the probate court for the sale. It was agreed that Edgar would, after the above action had been taken, execute an assignment of the interests so acquired to a trustee for the purpose of facilitating the distribution of the Evans property when it had been reduced to cash. By the agreement, Edgar, when the estate was liquidated, was to have $6,630 and interest, the amount of his verdict against Lammers; Parten was to be paid the amount he had advanced for the Eggum claim; the balance of the proceeds of the liquidation was to go two-thirds to the Evans beneficiaries and one-third to Pardee and Solether, attorneys for the Evans beneficiaries.
Sale of the interests of the beneficiaries under the Evans will was made to Edgar to satisfy his claim as assignee of the Lammers lien for $8,530, and the sale was duly confirmed by the probate court. September 8, 1926, pending its confirmation, Edgar was again fully advised of the facts, and he then executed an instrument, exhibit A, which was subsequently dated September 22, 1926, the date of the confirmation of the sale, which stated that the above matters were accomplished and by that instrument assigned to the Midland National Bank of Minneapolis all his right, title, and interest to the interests of the beneficiaries of the Evans will, the Midland National Bank to reduce the property to cash if the trustee under the Evans will had not done so, and to pay it out as agreed above, namely, first to Edgar to satisfy his verdict against Lammers, then *Page 343 
to Parten for the amount paid Eggum, and lastly to the Evans heirs and Pardee and Solether for their fees as attorneys for the said heirs. It is this trust instrument that is here in dispute.
The trial court found as a fact that Edgar delivered the instrument to Pardee and that the delivery was made for the purpose and with the intent on the part of Edgar to vest the beneficial interest in the persons therein set forth. Pardee has had possession of exhibit A ever since delivery. Tamazine M. Evans, Owen J. Evans' widow, died in December, 1934.
The trial court held the instrument to be a valid trust executed and delivered for a consideration, but thought it not necessary to appoint a trustee to administer it at the time, but as a conclusion of law made a provision for an application for a trustee whenever any beneficiary might desire to apply. (The Midland bank of Minneapolis had previously refused to act as trustee.)
It is asserted by the appellant that the trust agreement was obtained by fraud. We find no support for that theory in the record. It is true that by a prior arrangement Edgar had become the owner of the Lammers lien, but that lien had not ripened into title to the property of the Evans estate prior to the execution by Edgar of the trust agreement. The correspondence preceding this agreement abundantly advised Edgar of the entire situation, including the fact that Pardee and Solether were attorneys for the Evans beneficiaries and bound to protect their interests.
Edgar complains because in the letter dated September 4, 1926, prior to the signing of the trust agreement, Pardee stated to him, amongst other things:
"The trust company is working with us in this matter and we have satisfied them of our good faith in the matter of protecting the interest of the heirs which will be accomplished by this trust deed."
We cannot see the materiality of this statement, even if it were false. Appellant complains that there was no evidence that the trust company insisted that the rights of the "heirs" be protected. Certainly the appellant knew that it was the duty of Pardee and *Page 344 
Solether to protect the interest of the Evans heirs. He knew that the firm had successfully prevented the confirmation of a previous sale for the amount of the lien. The value of the property being several times the then value of his lien, he must have known that it would have been their duty to oppose the confirmation of a sale made at the price of the face value of the lien and which would have deprived them of their interests. Although not recited in the trust agreement, it is quite obvious from the record that the trust instrument was executed fairly to protect all interested parties while it was still possible for the heirs to oppose the confirmation of sale. In view of the situation, it cannot be said to have been voluntarily executed by the appellant without any consideration, because the Evans heirs had the right to oppose the confirmation of the sale. And on the showing made on this record there is no doubt that the probate court would have refused to confirm had they done so. The execution of the trust instrument, its delivery to Pardee as attorney for the Evans beneficiaries, and their action in refraining from opposing the confirmation occurred under such circumstances as to signify that the latter act was consideration for the execution of exhibit A. Landon v. Hutton, 50 N.J. Eq. 500, 507, 25 A. 953. That Edgar may have got less by exhibit A than he would have received by his previous arrangement with Parten, to which the Evans "heirs" were not parties or beneficiaries, does not vitiate exhibit A. The trust is therefore not a mere voluntary one without consideration, and it will not fail for want of acceptance by the trustee but will be enforced in equity. It was sufficient if Edgar had done all that was necessary to vest the equitable interest in the estate. We are of the opinion he did so by the delivery to Pardee. 1 Bogert, Trusts Trustees, § 202, p. 572. See also Rayhol Co. v. Holland, 110 Conn. 516,148 A. 358.
Nor do we think that it matters that by exhibit A Parten may have been placed in a more favorable position than under his previous arrangement. It was not necessary that consideration should run from Parten to Edgar. Fleenor v. Hensley, 121 Va. 367,93 S.E. 582. Parten may have been incidentally benefited by the *Page 345 
arrangement between Edgar and the Evans beneficiaries. This would not vitiate their arrangement.
Pardee and Solether had represented Edgar in procuring a verdict against Lammers, and with Edgar's knowledge and acquiescence they were representing the Evans beneficiaries. From those beneficiaries they were to get their compensation. No part of Edgar's share of the settlement was to go to Pardee and Solether. The instrument itself showed that. There was nothing in the situation which indicates that they did not act in the utmost fairness and good faith toward Edgar.
Other points raised by appellant we find not to merit discussion.
Judgment affirmed.